UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP

| | |
|---|---|
| EUNICE BARRERA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>CAMPBELL SOUP COMPANY,<br><br>Defendant | 2:24-cv-01523<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff Eunice Barrera ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Despite proliferation of meat substitutes, demand for beef is increasing.

2. More than two-thirds of Americans eat beef at least once a week.

3. The growing consumption of beef is consistent with the public's focus on consuming more protein.

4. The result is that beef is increasingly included in prepared foods, from breakfasts to snacks.

5. Though "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging" to judge the quality of what they are buying, the Federal Meat Inspection Act ("FMIA") protects them from companies highlighting beef where such foods are comprised mainly of non-beef. 21 U.S.C. §

601 *et seq*.; Title 9, Code of Federal Regulations ("C.F.R."), Parts 300 to 381.[1]

6. New York adopted these laws through its Agriculture and Markets Law ("AGM"). Article 5-B ("Sale of Meat"), AGM § 96-g *et seq.*; AGM § 96-s (adopting federal regulations); 1 NYCRR § 301.2.

7. To appeal to the public's demand for beef, Campbell Soup Company ("Defendant") sells canned soup represented as "Beef with Country Vegetables."



8. Despite the emphasis on beef, including its placement before "vegetables" and in a font twice as large, what buyers receive is a soup

---

[1] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Product Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326.

predominantly from vegetables.

9. That beef is not the predominant characterizing ingredient is revealed only by the fine print of the ingredient list on the back label, identifying "carrots [,] [and] potatoes" ahead of "seasoned beef." 9 C.F.R. § 317.2(f)(1).



10. The Product is "misbranded" because "Beef with Country Vegetables" "is false or misleading" by stating and/or implying the first listed food, beef, is predominant and/or present in an amount greater than the food type following it, vegetables. 21 U.S.C. § 601(n)(1); 1 NYCRR § 301.2(bb)(1).

11. The Product is "misbranded" because "Country Vegetables" "is false or misleading" since the carrots and potatoes are not prepared in the "country," understood by consumers as referring to pastoral areas, prior to being combined with the beef and other ingredients. 9 C.F.R. § 317.8(b)(2).

12. The potatoes and carrots are prepared at a scale significantly larger than what consumers would understand for a food prefaced by the descriptor, "country."

13. This scale means the use of industrial technology and machinery, the antithesis of visions conjured by the term, "country."

14. The Product is "misbranded" because "Beef with Country Vegetables" is not its "common or usual name." 21 U.S.C. § 601(n)(9); 1 NYCRR § 301.2(bb)(9).

15. A common or usual name is generally established by common usage or regulation.

16. A common or usual name facilitates consumer comparison, knowing products will be identified consistently.

17. Other soups, like Progresso's "Beef & Vegetable" and Walmart's Great Value brand, "Beef with Vegetable," identify "beef" before "vegetables" in their names but contain more beef ingredients than vegetable ingredients.




18. Since neither common usage nor regulation has defined a soup with more vegetables than beef as "Beef with Country Vegetables," it is required to bear a

4

"truthful descriptive designation." 9 C.F.R. § 317.2(c)(1); 1 NYCRR § 317.2(c)(1).

19. This requires that its name "clearly and completely identify [it]." 9 C.F.R. § 317.2(e)(1).

20. The United States Department of Agriculture ("USDA") has articulated the relevant principles for product names as applied to a variety of foods.

21. For example, a burrito "consist[s] of a flour tortilla, [with] Fillings [that] may contain, in addition to meat or poultry meat, such major ingredients as beans, potatoes, cheese, rice, tomatoes, and chilies."[2]

22. Where ingredients, like rice or beans, are declared in a burrito's name, they must appear in their order of predominance based on the relative amount.

23. Applying this to a burrito with more beans than beef, a non-misleading, true name would be "Beans, Beef, and Rice Burrito," not a "Beef With Beans and Rice Burrito," where the amount of beans was greater than the amount of beef.

24. These principles were applied to gorditas, a dish made with masa and stuffed with meat or poultry, cheese, rice and/or potatoes.

25. Where a gordita's name includes beef or chicken, but contains other characterizing ingredients such as potatoes, rice, cheese or beans, these must be reflected in the product's name in order of predominance.

---

[2] Food Safety and Inspection Service ("FSIS"), Food Standards and Labeling Policy Book, Office of Policy, Program and Employee Development, Feb. 2024.

26. A Beef and Potato Gordita would contain more beef than potatoes, while a Rice and Chicken Gordita would contain more rice than chicken.

27. As a result of the false and misleading representations and omissions identified here, the Product is sold at a premium price, at or around $2.26 for 18.8 ounces, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION

28. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

29. The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

30. Plaintiff is a citizen of New York.

31. Defendant Campbell Soup Company is a New Jersey corporation.

32. Defendant Campbell Soup Company has a principal place of business in New Jersey.

33. The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

34. The members of the proposed class Plaintiff seeks to represent are more than one hundred, because the Product has been sold at grocery stores, big box stores,

6

bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores, and/or online in this State and online to citizens of this State.

35. The Court has jurisdiction over Defendant because it transacts business within New York and sells the Product to consumers within New York from grocery stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores and/or online in this State and online to citizens of this State.

36. Defendant transacts business in New York, through the sale of the Product to citizens of New York from grocery stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores and/or online in this State and online to citizens of this State.

37. Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

38. Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial

revenue from the sale of the Product in this State.

39. Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

40. Venue is in this District with assignment to Central Islip Division because a substantial or the entire part of the events or omissions giving rise to these claims occurred in Suffolk County, which is where Plaintiff's causes of action accrued.

41. Plaintiff purchased, used and/or consumed the Product in reliance on the labeling and packaging identified here in Suffolk County.

42. Plaintiff first became aware the labeling and packaging was false and misleading in Suffolk County.

43. Plaintiff resides in Suffolk County.

## PARTIES

44. Plaintiff Eunice Barrera is a citizen of Suffolk County, New York.

45. Defendant Campbell Soup Company is a New Jersey corporation.

46. Defendant produces, markets, labels and distributes canned soups.

47. Plaintiff is like most consumers who like beef, for reasons including its nutrients and taste.

48. Plaintiff is like all consumers who look to the front label of products they buy to see what they are buying and to learn basic information.

49. Plaintiff is like all consumers and is accustomed to the front label of packaging telling them significant information about the foods they buy.

50. One of the most important features Plaintiff considers is a product's name.

51. Plaintiff is like most consumers and when they see a product name identifying more than one component, they expect the first listed is present in a greater amount than those which follow.

52. Plaintiff expected that the Product, labeled as a "Beef With Country Vegetables," contained more beef than vegetables.

53. Plaintiff expected that the Product, labeled as having "Country Vegetables," contained vegetables prepared and added to the soup in the manner of the countryside, without industrial machinery.

54. Plaintiff read, saw and relied on the statement of "Beef With Country Vegetables."

55. Plaintiff did not expect the Product to contain more vegetables than beef.

9

56. Plaintiff did not expect the Product's vegetables to not be prepared and added to the soup in the manner of the countryside.

57. Plaintiff purchased the Product between January 2021 and January 2024, at grocery stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores and/or online, in Suffolk County, and/or other areas.

58. Plaintiff bought the Product at or around the above-referenced price.

59. Plaintiff paid more for the Product than she would have had she known (1) it contained more vegetables than beef and (2) the vegetables were not prepared and added to the soup in the countryside nor prepared in the manner of the countryside, as she would not have bought it or would have paid less.

60. The Product was worth less than what Plaintiff paid, and she would not have paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

61. Plaintiff seeks to represent the following class:

> All persons in New York who purchased the Product in New York during the statutes of limitations for each cause of action alleged.

62. Excluded from the Class are (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediate family members of any of the

foregoing persons, (b) governmental entities, (c) the Court, the Court's immediate family, and Court staff and (d) any person that timely and properly excludes himself or herself from the Class.

63. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

64. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

65. Plaintiff is an adequate representative because her interests do not conflict with other members.

66. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

67. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

68. The class is sufficiently numerous and includes several thousand people.

69. This is because Defendant sells the Product to consumers through hundreds of third-party retailers and online in the State Plaintiff is seeking to represent.

70. Plaintiff's counsel is competent and experienced in complex class action

11

litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
<u>New York General Business Law ("GBL") §§ 349 and 350</u>

71. Plaintiff incorporates by reference paragraphs 1-27.

72. The purpose of the GBL is to protect consumers against unfair and deceptive practices.

73. The GBL considers false advertising and deceptive practices in the conduct of any trade or commerce to be unlawful.

74. Violations of the GBL can be based on the principles of the Federal Trade Commission Act ("FTC Act") and FTC decisions with respect to those principles. 15 U.S.C. § 45 *et seq*.

75. In considering whether advertising is misleading in a material respect, the FTC Act recognizes that the effect of advertising includes not just representations made or suggested by words and images, but also the extent to which [it] fails to reveal facts material in the light of such representations. 15 U.S.C. § 55(a)(1).

76. Defendant's false and deceptive representations and omissions with respect to the Product's (1) purported predominant characterizing ingredient, beef, and (2) vegetables, represented as prepared and added to the soup in the countryside or in the manner of the countryside, are material in that they are likely to influence consumer purchasing decisions.

77. Plaintiff paid more for the Product than she would have had she known (1) it contained more vegetables than beef and (2) the vegetables were not prepared and added to the soup in the countryside nor prepared in the manner of the countryside.

78. This is because consumers expect (1) the first component of a product name of more than one component will be present in a greater amount than what follows it, and (2) that if vegetables, or other foods, were not prepared in countryside or in the manner of the countryside, they would have been described as "country style."

79. The Product's labeling and packaging violated the FTC Act and thereby violated the GBL because it expressly states (1) beef is the predominant soup ingredient and (2) the vegetables were prepared in the countryside or in the manner of the countryside, when this is false and/or misleading.

80. The Product's labeling and packaging violated the FTC Act and thereby violated the GBL because it impliedly suggests

81. (1) beef is the predominant soup ingredient and (2) the vegetables were prepared in the countryside or in the manner of the countryside, when these statements, images and/or their implications are false and/or misleading.

82. The labeling and packaging of the Product violated the FTC Act and thereby violated the GBL because the statements such as "Beef with Country

13

Vegetables" created the erroneous impression the predominant ingredient was beef and that the vegetables were prepared in the countryside or in the manner of the countryside.

83. Violations of the GBL can be based on public policy, established through statutes, law or regulations.

84. The labeling of the Product violates laws, statutes, rules and regulations that are intended to protect the public.

85. The labeling of the Product violated the GBL because the representations and omissions are misleading.

86. The labeling of the Product violated the GBL because the representations and omissions of "Beef with Country Vegetables" was contrary to the directives of the FMIA, Article 5-B of the AGM, and their regulations, which prohibit consumer deception. 21 U.S.C. § 601 *et seq.*; AGM § 96-g *et seq.*

87. These include the following federal and state laws and regulations, described above.

| Federal | State |
|---|---|
| 21 U.S.C. § 601(n)(1) | 1 NYCRR § 301.2(bb)(1) |
| 21 U.S.C. § 601(n)(9) | 1 NYCRR § 301.2(bb)(9) |
| 9 C.F.R. § 317.2(c)(1) | 1 NYCRR § 317.2(c)(1) |
| 9 C.F.R. § 317.2(e)(1) | |

9 C.F.R. § 317.2(f)(1)

9 C.F.R. § 317.8(b)(2)

88. Plaintiff believed the Product (1) consisted mainly of beef and (2) the vegetables were prepared in the countryside or in the manner of the countryside, even though (a) it consisted mainly of vegetables and (b) the vegetables were not prepared in the countryside of in the manner of the countryside.

89. Plaintiff seeks to recover for economic injury and/or loss she sustained based on the misleading labeling and packaging of the Product, a deceptive practice under the GBL.

90. Plaintiff will produce evidence showing how she and consumers paid more than they would have paid for the Product, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis and other advanced methodologies.

91. As a result of Defendant's misrepresentations and omissions, Plaintiff was injured and suffered damages by her payment of a price premium for the Product, which is the difference between what she paid based on its labeling and marketing, and how much it would have been sold for without the misleading representations and omissions identified here.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

15

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   February 29, 2024

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

Spencer Sheehan

Sheehan & Associates P.C.

*Counsel for Plaintiff*

## Certificate of Service

I certify that on February 29, 2024, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☐ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☒ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☐ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan